

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

Case No.: _____

UNITED STATES OF AMERICA ex rel.,
MARIANNE K. PARKER,

        Plaintiff/Relator,

v.

FLORIDA CANCER SPECIALISTS, P.L.,
d/b/a FLORIDA CANCER SPECIALISTS
AND RESEARCH INSTITUTE,

        Defendant.
_____/

2:17-CV-428-PtM-38CM

**FILED UNDER SEAL**

## COMPLAINT PURSUANT TO FALSE CLAIMS ACT (31 U.S.C. § 3730(b)(2))

COMES NOW, UNITED STATES OF AMERICA ex rel. Marianne K. Parker (hereinafter "Relator"), and hereby submits the following Complaint under seal in accordance with the requirements of the False Claims Act, 31 U.S.C. §3730(b)(2).

### I. NATURE OF THE ACTION

1. This matter involves one of the largest cancer centers in America and their refusal to return substantial overpayments for treatment provided to VA patients, despite being made aware of the situation by Relator.

2. Relator worked as a Claims Resolution Specialist for Florida Cancer Specialists and Research Institute (hereinafter "Defendant"). Relator uncovered several incidents of overpayments sent by the VA for physician billed services. Relator's investigation into this matter uncovered significant overpayments dating back to October 2012 and continuing through the present. These overpayments were obvious on their face, in that the VA reimbursed at a



significantly higher rate than what they were allowed to pay under the law.

3. The majority of veterans enrolled in the VA health care system receive care in VA-operated medical facilities. The VA created the Non-VA Medical Care Program to purchase health care services from community health care providers when services were not available from a VA medical facility. Services provided at the Non-VA Centers should be paid at the applicable Medicare rates and not at the rates billed by providers. While seemingly counterintuitive, the practice of submitting a higher rate while knowing you are entitled to a much lower negotiated or regulated rate is actually quite standard and a generally accepted practice.

4. Relator briefed her management on what she had been told by the VA representative and was told by the refund coordinator that the VA would have to formally request the overpayments before Defendant would refund any money. In other words, as long as the VA kept paying them, Defendants would keep billing this way, and keep the overpaid money until told to return it, all despite acknowledging these were overpayments.

5. Seven months after observing that Defendant was not addressing the overpayments, Relator contacted the VA's Office of Inspector General (OIG) Hotline to report the fraud she uncovered. During the next several years, Relator and OIG officials corresponded on a regular basis. Relator submitted 55 examples[1] of overpayments from the VA to Defendant.

6. On June 5, 2017, the VA OIG released a report on the overpayments that fully substantiated the allegations submitted by Relator. The OIG had reviewed payments submitted by Defendant and other similar providers in Florida and concluded that from the time period October 1, 2012 through March 31, 2016, the VA had overpaid approximately $17.2 million to

---

[1] The OIG confirmed that 52 of the 55 examples provided by Relator were over paid by the VA and not refunded by Defendant.

Non-VA medical providers with more than $6.9 million being attributed to Defendant.

7.     Defendant knowingly kept substantial overpayments totaling nearly $7 million that were owed to the VA. Rather than do the right thing and promptly return overpayments, Defendant and similar medical providers, looked the other way for more than four years with the hope that they would never be caught. Relator was instrumental in uncovering this blatant fraud and brings this action to expose these practices and assist the government in recovering vital funds for the VA healthcare program.

## II.     JURISDICTION AND VENUE

8.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345, and 1367(a).

9.     This Court may exercise personal jurisdiction over Defendant pursuant to 31 U.S.C. § 3732(a) because the acts committed by Defendant in violation of the FCA occurred in the Middle District of Florida, and because Defendant can be found in, resides, and/or transacts business in the Middle District of Florida.

10.    Venue is proper in the Middle District of Florida under 31 U.S.C. § 3732 and 28 U.S.C. §§ 1391(b) and (c) because a substantial part of the events giving rise to the claims alleged in this action occurred in the Middle District of Florida.

## III.    PARTIES

### a.  Relator

11.    Under the FCA, a person with knowledge of false or fraudulent claims against the government (a "relator") may bring an action on behalf of the government and herself.

12.    Marianne K. Parker is a resident of Ft. Myers, Florida and has worked for Defendant since August 2011.

13. Relator is an original source of information within the meaning of the False Claims Act, 31 U.S.C. § 3730(e)(4)(B).

**b. Defendant**

14. Florida Cancer Specialists and Research Institute is located at 4371 S. Shoemaker Blvd. Ft. Myers, Florida 33916. According to its web-page, Defendant was founded in 1984 and is the largest independent medical oncology/hematology practice in the United States. Defendant has over 200 physicians, 160 nurse practitioners and physician assistants and nearly 100 locations in its network of providers. Defendant serves patients, including those covered by VA health insurance, throughout the state of Florida.

### IV. DEFENDANTS' SCHEME

15. In April 2014, Relator, in her capacity as a claims resolution specialist, uncovered an issue related to the VA overpaying for physician services. A specific example of this issue is described below.

16. A VA patient[2], received services by Defendant on September 11, 2013. Defendant billed the VA $60, $510 and $484 for HCPCS codes J1100, J2459 and J9181 respectively. The three J codes were incorrectly paid as submitted and not at the established Medicare rate which should have been $2.44, $193.84 and $15.62 respectively.[3] This resulted in an overpayment to Defendant of $842.10.

17. Relator continued to investigate the overpayment of J codes by the VA and brought it to the attention of her supervisor and others. It turned out that the VA was improperly overpaying many claims in the amounts they were submitted rather than the correct established

---

[2] Patient name has been removed, but has been provided to the government, and will be provided to Defendants upon unsealing.
[3] CPT codes are used to bill for services and procedures that are provided by health care professionals. J codes are part of the Healthcare Common Procedure Coding System (HCPCS) and supplement CPT codes. Generally, J codes are used for physician-administered medication and chemotherapy drugs.

Medicare rate.

18.     In April 2014, Relator spoke with Defendant's Refund Coordinator, Christina Trammell, who told Relator that Defendant's Vice President of Revenue Cycle, Sarah Cevallos, and Business Office Supervisor, Holly Perkins, already knew about the overpayments. Ms. Perkins and Ms. Cevallos had asked Ms. Trammell if they could keep the overpayments. Ms. Trammell instructed Relator to speak with her supervisor, Ms. Perkins for guidance. Ms. Perkins told Relator to contact the VA and try to determine why the VA was overpaying the Defendant but did not authorize or initiate any repayment.

19.     Relator faxed requests to VA offices located in Orlando and Gainesville, Florida that included a five page report that outlined multiple instances of the VA overpaying Defendant. Relator explained the overpayments in the fax cover page stating "it appears there is a glitch in your system that is not recognizing the allowed amounts and are paying a large number of codes in full."

20.     Relator went on to tell the VA that "the errors are prevalent throughout all of the VA centers in Florida that we bill to."

21.     Relator eventually spoke to a representative of the Gainesville VA who told Relator the VA usually treats chemotherapy patients within its own facilities. However, if they become backlogged, the VA allows Non-VA providers to treat VA patients and the reimbursements for that treatment are set by law.

22.     Relator explained to her supervisor and others what the VA representative had told her. Relator followed up with an email dated April 23, 2014, that suggested to Ms. Perkins and Ms. Trammell that "you might want to have someone call who has more knowledge of this incident than I do for verification."

23. Refund Coordinator Trammell told Relator that she would not self-report the overpayments to the VA.

24. Relator observed that from April through October 2014, despite being actually aware of the amount and extent of the overpayments, Defendant took no action in returning any overpayments to the VA. Relator and her employer knew that the amounts paid by the VA for services provided by Defendant were not appropriate. Upon information and belief, no one else from Defendant attempted to resolve the overpayment issues or refund overpayments back to the VA.

25. On or about October 30, 2014, out of frustration, Relator called the VA OIG Hotline and told the hotline representative about the overpayments by the VA dating back as far as June 2013. On December 4, 2014, the VA OIG emailed Relator requesting a telephone call to discuss the allegations submitted by Relator. Over the next two years, Relator significantly assisted the VA OIG in their investigation. Relator and OIG representatives exchanged multiple emails concerning OIG's investigation.

26. Relator submitted 55 claims to the VA OIG that she believed had been overpaid by the VA. Relator provided the VA OIG with Preliminary Fee Remittance Advice Reports for three different VA Medical Centers to include the Orlando Veterans Administration Medical Center, the Department of Veterans Affairs, Bay Pines, Florida and the North Florida/South Georgia Veterans Health System. Each of the reports provided to the VA OIG contained patient billing information that was to be submitted to the VA by Defendant for payment. During Relator's investigation into the overpayments, she determined that physician-administered drugs, associated or billed with a J-Code, were being billed to the VA and not reimbursed at the Medicare rate as established by federal statutes. She also determined that other services, like

diagnostic PET scans, MRIs and laboratory tests were being similarly reimbursed at higher rates, resulting in substantial overpayments.

27.  Defendant would receive an authorization form from the VA for each patient that would outline the specific rules associated with providing services to veterans to include fees being charged to not exceed those made to the general public.

28.  Defendant knew that overpayment of fees paid by the VA should be reported promptly. Defendant was told by Relator about the overpayments and yet continued to keep the money.

29.  Relator also prepared a spreadsheet that was submitted to the VA OIG that provided specific details on 55 claims that were overbilled by Defendant. To date, Defendant has not paid back any of the overbilled amounts which was required by CMS rules and regulations. Relator identified the following 37 payments for VA patients that were overbilled by Defendant:

| Date of Service | Patient[4] | J Code | Amount Billed and Paid | Amount Over Paid by VA |
|---|---|---|---|---|
| 10/15/2013 | | J9025 | $2,600 | $1,451 |
| 10/15/2013 | | J1100 | $30 | $28.78 |
| 10/15/2013 | | J2469 | $510 | $320.69 |
| 10/01/2013 | | J9206 | $1,105 | $1,082.75 |
| 9/30/2013 | | J1441 | $827 | $368.49 |
| 10/04/2013 | | J1441 | $827 | $368.49 |
| 10/09/2013 | | J2820 | $600 | $314.08 |
| 10/09/2013 | | J9201 | $1,065 | $1,041.12 |
| 10/09/2013 | | J1100 | $30 | $28.78 |
| 10/09/2013 | | J2150 | $11 | $9.58 |
| 10/09/2013 | | J2469 | $510 | $316.20 |
| 10/09/2013 | | J3475 | $6 | $5.60 |
| 10/09/2013 | | J3480 | $40 | $38.70 |
| 10/09/2013 | | J9060 | $134 | $129.78 |
| 10/08/2013 | | J9310 | $15,499 | $8,033.30 |
| 10/08/2013 | | J9045 | $729 | $720.08 |

---

[4] Names have been removed for privacy, but provided to the government.

| 10/08/2013 | | J9265 | $864 | $851.68 |
|---|---|---|---|---|
| 10/08/2013 | | J1100 | $30 | $28.78 |
| 10/08/2013 | | J2469 | $510 | $316.20 |
| 10/08/2013 | | J2469 | $510 | $316.20 |
| 10/08/2013 | | J1100 | $30 | $28.78 |
| 10/08/2013 | | J7120 | $23 | $22 |
| 4/18/2013 | | J2469 | $510 | $316.20 |
| 4/18/2013 | | J1100 | $30 | $28.78 |
| 10/22/2013 | | J2469 | $510 | $316.16 |
| 10/22/2013 | | J9264 | $4,800 | $2,892.20 |
| 10/16/2013 | | J2505 | $5,683 | $2,542,78 |
| 04/14/2014 | | J2469 | $510 | $316.16 |
| 07/09/2013 | | J1100 | $60 | $57.56 |
| 07/09/2013 | | J2469 | $510 | $316.16 |
| 07/09/2013 | | J9181 | $484 | $468.38 |
| 07/10/2013 | | J1100 | $60 | $57.56 |
| 07/10/2013 | | J2469 | $510 | $316.16 |
| 07/10/2013 | | J9181 | $484 | $468.38 |
| 09/09/2013 | | J1100 | $60 | $57.56 |
| 10/29/2013 | | J9310 | $9,863 | $5,112.10 |
| 02/13/2013 | | J2469 | $510 | $316.16 |

30. The 37 claims amount to nearly $27,000 in overbilling or reverse false claims by Defendant. According to the VA OIG, Office of Audits and Evaluation review that was published on June 5, 2017, they substantiated the allegations submitted by Relator and determined that approximately $17.2 million was overpaid by the VA to Defendant and other providers. During its audit, the OIG reviewed 73,124 payments to non-VA care providers for physician-administered drugs from October 1, 2102 through March 31, 2016 and identified 26,178 overpayments, totaling $17.2 million. The audit did not include overpayments relating to other services like diagnostic PET scans, MRIs and laboratory tests.

31. Additionally, the VA OIG excluded from their investigation 13,342 claims for J3490. This code is used only when another J code does not describe the drug that is being administered. Defendant and other providers should be required to refund to the VA the difference between the actual amount paid and the actual Medicare allowed amount.

## V.     LEGAL AND REGULATORY FRAMEWORK

### A. The False Claims Act

32.     The False Claims Act or FCA provides for the award of treble damages and civil penalties for, *inter alia,* knowingly submitting, or causing the submission of, false or fraudulent claims for payment to the United States government. 31 U.S.C. § 3729(a)(1).

33.     The FCA provides, in pertinent part, that a person who:

(a)(1)(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

(a)(1)(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; . . .

(a)(1)(C) conspires to commit a violation of the Act specifically to violate the other subparagraphs which create liability;...

(a)(1)(G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government; . . .

is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104-410), plus 3 times the amount of damages which the Government sustains. . . .31 U.S.C. § 3729

34.     For purposes of the FCA:

"the terms "knowing" and "knowingly" (A) mean that a person, with respect to information (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information; and (B) require no proof of specific intent to defraud." 31 U.S.C. § 3729(b).

### B. VA Medical Care and Reimbursement

35.     The VA provides a nationwide system of health care services and benefit programs for America's Veterans. Primarily, veterans seeking VA health care should be treated

at VA medical facilities. Non-VA medical care can be authorized under specific circumstances to include geographic inaccessibility, when VA facilities or services are not feasibly available or the services can't be economically provided to the veteran.

36. If Non-VA care is approved, services are authorized by the VA under the provisions of 38 U.S.C. §1703 and payments would be rendered in accordance with this statute and federal regulations found in 38 CFR § 17.55 (relating to hospitals) and § 17.56. These regulations state when there is no contract or negotiated agreement in place with the non-VA provider, the VA will pay claims in accordance with established regulations. *See* 38 CFR §17.56(a)(1) & (2).

37. 38 CFR § 17.56(a)(2) further provides:

*"If an amount has not been negotiated under paragraph (a)(1) of this section, VA will pay the lowest of the following amounts:*

*(i) The applicable Medicare fee schedule or prospective payment system amount ("Medicare rate") for the period in which the service was provided (without any changes based on the subsequent development of information under Medicare authorities), subject to the following:*

*(A) In the event of a Medicare waiver, the payment amount will be calculated in accordance with such waiver.*

*(B) In the absence of a Medicare rate or Medicare waiver, payment will be the VA Fee Schedule amount for the period in which the service was provided. The VA Fee Schedule amount is determined by the authorizing VA medical facility, which ranks all billings (if the facility has had at least eight billings) from non-VA facilities under the corresponding procedure code during the previous fiscal year, with billings ranked from the highest to the lowest. The VA Fee Schedule amount is the charge falling at the 75th percentile. If the authorizing facility has not had at least eight such billings, then this paragraph does not apply.*

*(ii) The amount negotiated by a repricing agent if the provider is participating within the repricing agent's network and VA has a contract with that repricing agent. For the purposes of this section, repricing agent means a contractor that seeks to connect VA with discounted rates from non-VA providers as a result of existing contracts that the non-VA provider may have within the commercial health care industry.*

*(iii) The amount that the provider bills the general public for the same service."*

38. The VA also produces a document which provides guidance to providers entitled "Working with the Veterans Health Administration: A Guide for Providers." The guide covers rules and regulations for non-VA medical care providers. The guide includes VA Form 10-7078 which allows non-VA providers to invoice the VA for medical and hospital services. It clearly references that payment to the non-VA providers will be based on 38 CFR § 17.55 and 17.56 and states in part, "when there is no contract or negotiated agreement in place with the non-VA provider, VA will pay claims in accordance with established regulations."

39. Providers like Defendant herein, enter into provider agreements with the VA in order to treat VA patients and seek reimbursement from the VA. See 38 CFR §17.1530(b)

## VI. CAUSES OF ACTION

### FIRST CAUSE OF ACTION
False Claims Act: Presentation of False Claims 31 U.S.C. § 3729(a)(1)(A)

40. Relator repeats and incorporates by reference the allegations contained in paragraphs 1- 39 of this Complaint as if fully set forth herein.

41. Defendants knowingly presented, and caused to be presented, false or fraudulent claims for payment or approval to the United States for injectable drugs and related services that were false as a result of knowing that the VA would overpay them.

42. By virtue of the false or fraudulent claims that Defendants made and/or caused to be made, the United States suffered damages and is therefore entitled to treble damages under the FCA, to be determined at trial, plus civil penalties of not less than $5,500 and up to $11,000 for each violation.

## SECOND CAUSE OF ACTION
False Claims Act: Presentation of False Statements
Material to False Claims 31 U.S.C. § 3729(a)(1)(B)

43. Relator repeats and incorporates by reference the allegations contained in paragraphs 1-39 of this Complaint as if fully set forth herein.

44. Defendants knowingly made, used, or caused to be made or used false records or statements material to false or fraudulent claims, to wit, remittances to VA, and to get such claims paid by the United States with respect to injectable drugs and related services that were ineligible for reimbursement as a result of overpayment.

45. Defendants knowingly made, used, or caused to be made or used false records or statements material to false or fraudulent claims and to get false or fraudulent claims paid by the United States with respect to injectable drugs and related services in the form of the claims submissions for these drugs and services, while knowing the VA would overpay these claims.

## THIRD CAUSE OF ACTION
False Claims Act: Reverse False Claim
31 U.S.C. § 3729(a)(1)(G)

46. Relator repeats and incorporates by reference the allegations contained in paragraphs 1-39 of this Complaint as if fully set forth herein.

47. Defendants knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government.

48. Defendants knowingly received overpayments from the VA relating to injectable drugs and other services provided to VA patients.

49. Defendants were not entitled to keep or use these funds, but were obligated to return them to the VA.

50. Defendants have knowingly failed to report or repay the amounts owed from 2012

through the date of filing this complaint.

## VII. PRAYER FOR RELIEF

WHEREFORE, Relator, on behalf of the United States, demands judgment against Defendants as to Counts I-III of the Complaint, as follows:

A. That Defendant cease and desist from violating 31 U.S.C. §3729 *et seq.*

B. That this Court enter judgment against Defendant in an amount equal to three times the amount of damages the United States government has sustained because of Defendant's actions, plus a civil penalty of $11,000 for each false claim, together with the costs of this action, with interest, including the cost to the United States government for its expenses related to this action.

C. That this Court enters judgment against Defendant for the maximum amount of actual damages under 31 U.S.C. §3729 *et seq.*

D. That Relator be awarded all costs incurred, including her attorneys' fees.

E. That the United States and Relator receive all relief, both in law and in equity, to which they are entitled.

**DEMAND FOR JURY TRIAL**

Relator demands a jury trial in this case.

Dated July 26, 2017

Respectfully submitted,

BY: /s/ James Young

James D. Young (FBN 567507)
jyoung@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
76 S. Laura St., Suite 1100
Jacksonville, FL 32202
(904)361-0012 Telephone

John Yanchunis (FBN 324681)
jyanchunis@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP

Page 13 of 14

201 North Franklin Street, 7th Floor
Tampa, Florida 33602
(813) 318-5169 Telephone

*Attorneys for Plaintiff/Relator*